Stanella, Appellant, *v.* Scranton Coal Company.

Argued March 2, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, PARKER, JAMES and RHODES, JJ.

*Henry Temin,* with him *Todd Daniel* and *Albert S. Rosenberg,* for appellant.

*Walter W. Harris,* of *O'Malley, Hill, Harris & Harris,* for appellee.

OPINION BY CUNNINGHAM, J., July 10, 1936:

The proceeding which gave rise to the present controversy, in this workmen's compensation case, was the filing by the appellant-claimant with the board, on August 23, 1933, of a petition reading: "I respectfully request the workmen's compensation board to determine the amount of compensation due me for partial disability, based upon such earning power as I can establish by testimony before the [board]. I have had no compensation since the date of the decision of Referee Beemer of December 18, 1930, although I have been continuously disabled since that time."

It is apparent the relief sought was that the board should fix the amount of compensation due the petitioner for partial disability, under the state of the record as it then existed before the compensation authorities; the petition was not for the reinstatement of a terminated or suspended agreement, but rather for the enforcement of an alleged existing liability upon the part of the employer.

The employer answered, denying claimant had at any time been partially disabled and averring that he repeatedly refused to accept employment and had failed to comply with the order of Referee Beemer, referred to in the petition.

The referee to whom the petition and answer were assigned, T. Duncan Just, held a hearing at which testimony was taken but did not dispose of the issues raised by the petition and answer upon their merits.

In an order, dated December 15, 1933, the referee, after reviewing the former proceedings and expressing the opinion that there had been "no change in the situation in relation to this claimant over that existing at the date of Referee Beemer's decision" and that claim-

ant had not endeavored in good faith to secure employment, dismissed the petition upon the technical ground that he was without jurisdiction, because "the remedy of the claimant was an appeal from the decision of Referee Beemer which was not taken or the filing of a petition within a year of the last payment of compensation, neither of which remedies had been taken by the claimant."

The board and court below affirmed this action of the referee, holding that as the order of Referee Beemer had been made December 8, 1930, consideration of the petition was barred by the limitation of "one year after the date of the last payment of compensation," contained in the amendment of April 13, 1927, P. L. 186, 194, to the second paragraph of section 413 of our amendatory Workmen's Compensation Act of June 26, 1919, P. L. 642, 661.

The present appeal is by the claimant from the judgment entered by the court below in favor of the defendant employer, and the question involved is whether claimant was entitled to a hearing and disposition of his petition upon its merits. The case has some unusual features which require a review of the proceedings as they appear upon the record.

On April 11, 1929, claimant accidentally suffered a fracture of his right leg while in the employ of the defendant company as a laborer. An open agreement was entered into between the parties, and approved by the board, for payment of compensation for total disability, under which payments were made until April 3, 1930. The company then tendered claimant payment under the agreement for two additional weeks, upon condition that he execute a final receipt. This proposition was rejected by claimant and he has received no payments beyond April 3, 1930.

On October 25, 1930, the employer filed its petition for termination of the agreement, in which it averred

that claimant "was able to resume his regular employ-
ment on April 18, 1930, when discharged from further
treatment by the attending physician ...... [and] had
fully recovered from injuries sustained on April 11,
1929." Claimant answered that he was "not physically
able to resume his regular employment with defendant
company for the reason that he [was] still suffering
from the effects of the injuries sustained by him on
April 11, 1929." The petition and answer were referred
to Referee Beemer who took testimony on both sides
and made, inter alia, the following findings of fact:

"4. The company doctor discharged him on April
17, 1930, for lighter work, such as road cleaning.

"5. The referee finds from the evidence that respond-
ent-claimant is able to do some kind of work."

The only interpretation which can be placed upon
these findings is that claimant's disability as of some
date subsequent to April 17, 1930, had decreased from
total to partial, but that he was still partially disabled.
As a so-called conclusion of law, the referee said: "As
it appears from the evidence that respondent-claimant
has been able to do some kind of work since April 17,
1930, payments should be suspended until he returns
to work and makes an honest effort to establish his
earning power." The following order was then entered
by the referee: "Petitioner is directed to pay respond-
ent-claimant compensation at the rate of $15.00 per
week from April 4, 1930, to April 17, 1930, and then
payments should be suspended until he returns to work
and establishes his earning power." Neither the em-
ployer nor the claimant appealed to the board from
this order.

We see no justification under the statute for such an
order by a referee. The only definitive feature of his
action so far as the employer was concerned was that
it had failed to establish its averment that claimant's
disability had ceased, and, as to claimant, the only

thing decided was that his total disability had changed to partial. If claimant accepted this finding, and his subsequent petition shows he did accept it, he had no occasion to appeal from the order. We think it was the clear duty of the referee to proceed to fix the date upon which claimant's total disability became partial and then determine, as best he could from the evidence, the extent of his loss of earning power: Fornatti v. Tower Hill Connellsville Coke Co., 77 Pa. Superior Ct. 122. The provision in section 413 to the effect that the filing of a petition for termination operates as a supersedeas of the terms of the agreement to the extent subsequently justified by the evidence, contemplates a prompt ascertainment of the earning power of an injured employee, and it would be unjust to penalize a claimant because a referee has been remiss in the performance of that duty.

In reality the order of the referee held the entire matter in abeyance and undertook to compel claimant to forego all compensation until he had furnished a practical demonstration of his earning power by engaging in some kind of employment. Such procedure is not authorized by the statute. We are advised this erroneous practice upon the part of referees has been corrected by the present board.

As we construe the order, its legal effect may be said to have been a finding that the employer was no longer liable to pay claimant for total disability but was liable for partial in an amount to be ascertained at some future time.

The question whether the limitation of one year in the second paragraph of section 413 is applicable to the situation disclosed by this record remains to be considered.

The court below and counsel for the employer cite and rely upon the statement of this court in Zupicick v. P. & R. C. & I. Co., 108 Pa. Superior Ct. 165, 164 A.

731, that agreements which have been terminated or *suspended* are taken care of by the second paragraph of section 413.

That paragraph provides, inter alia, that the compensation authorities "may ...... suspend, or terminate, an original or supplemental agreement ...... upon proof that the disability of an injured employe has ...... temporarily or finally ceased ......" It also provides that a terminated or suspended agreement may be "reinstated" upon proof that the disability has "recurred." Such reinstatement is subject, however, to the limitation that, except in eye injuries, "no agreement ...... shall be ...... reinstated unless a petition is filed with the board within one year after the date of the last payment of compensation, with or without an agreement," and to the further qualification that reinstatement must be applied for within the general limitations of the act—500 weeks for total disability and 300 for partial.

Authority to terminate an agreement was conferred upon the board in the original Workmen's Compensation Act of June 2, 1915, P. L. 736, 754, §426, but *suspension* of agreements was not authorized until the amendment of June 26, 1919, P. L. 642, 661, wherein former section 426 became section 413.

It is clear, we think, that the legislature intended to give the employer the remedy of obtaining a termination of the agreement upon proof that the disability of an injured employee has "finally ceased," or a *suspension* when it has "temporarily" ended.

When an agreement has been "suspended," as contemplated by the section, the employer is entirely free from liability to pay any compensation, unless there is a recurrence of disability within the period fixed for reinstatement. That was not the effect of the order in this case.

The obstacles which, in our opinion, prevent the appli-

cation of the limitation of one year in this case are: (a) the agreement, for the reasons above stated, had not been terminated or suspended, within the intendment of the statute; (b) the prayer of the petition was not for reinstatement of the agreement but for an adjudication of the extent to which claimant's earning power had been impaired; and (c) there had been no "last payment of compensation," within the meaning of the section.

It is clear from claimant's petition of August 23, 1933, filed within the period of 300 weeks from the seventh day after the accident, that he was not attempting to question the conclusion of the referee that his disability was only partial, but was requesting the board to proceed to determine the amount of compensation due him for such loss of earning power as the evidence already taken, and such other evidence as might be submitted, would justify.

We had occasion to construe, in Furman v. Standard Pressed Steel Co., 111 Pa. Superior Ct. 44, 169 A. 243, the meaning of the phrase "last payment," as used in section 413. We think this case should be controlled by the principles there announced. This claimant had a right to decline to accept the payment tendered for total disability for the period from April 4, to April 17, 1930, because of the employer's demand that he execute a final receipt. The employer's remedy was to make a prompt application to the board for modification or termination of the agreement. It did not avail itself of this remedy until the filing of its petition to terminate on October 25, of that year.

It then had the burden of proving its averment that claimant "had fully recovered" from his injuries: Carson v. Real Estate-Land T. and T. Co., 109 Pa. Superior Ct. 37, 165 A. 677. As we have seen, it failed to show anything more than that claimant's total disability had changed into partial.

We, of course, express no opinion upon the merits of this case as the question of the extent of claimant's loss of earning power has not yet been considered by the compensation authorities. All we decide is that it was error to dismiss his petition of August 23, 1933, upon the ground of lack of jurisdiction.

The judgment is reversed and the record remitted to the court below to the end that it may be returned to the board for further proceedings not inconsistent with this opinion.